UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CIVIL DIVISION
CASE NO. _____

MW UNIVERSAL, INC.                                                        PLAINTIFF

V.                              **COMPLAINT**

G5 CAPITAL PARTNERS, LLC                                                  DEFENDANT

      SERVE:    WILKIE & GRAFF, LLC
                      78 MAIN STREET
                      KINGSTON, NEW YORK 12401

Comes now the Plaintiff, MW Universal, Inc., by and through counsel, and for its Complaint herein against the Defendant, states as follows:

## FACTS

1. The Plaintiff, MW Universal, Inc. (Hereinafter "MW"), is and has been at all times relevant hereto, a Delaware Corporation, registered to do business in the Commonwealth of Kentucky, with its principal place of business at 2008 Cypress, Suite 120, Paris, Kentucky 40361;

2. The Defendant, G5 Capital Partners, LLC (Hereinafter "G5"), is and has been at all times relevant hereto, a New York Limited Liability Company with its principal place of business in Ulster County, New York;

3. The fraudulent conduct and representations made by G5, as well as the damages claimed for which MW is complaining, were directed to MW at its principle place of business in Paris, Kentucky, and G5 has sufficient contacts as a nationwide business to establish personal jurisdiction;

4. This Court has diversity jurisdiction pursuant to U.S.C.A. Title 28, Part IV, Chapter

85, section 1332, as MW is a Delaware Corporation with its principle place of business in Paris, Kentucky and G5 is a New York Limited Liabilty Company;

5. The damages being sought by the Plaintiff are in excess of Seventy-five thousand and no/100 ($75,000.00) dollars, exclusive of costs and interest;

6. Venue is proper in the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. section 1391 as the damages claimed occurred in the Eastern District of Kentucky;

7. On March 15, 2007, MW and G5 entered into a contract (the "Contract" attached as Exhibit 1) for G5 to provide its best efforts to obtain financing for MW. (Exhibit 1 – page 2, first bullet point, first sentence.)

8. MW sought G5's services to secure financing for the purpose of raising funds for the acquisition of assets or equity interest of metals manufacturing companies and facilities as well as to raise funds for working capital. (Exhibit 1– page 2, sub-set of first bullet point)

9. G5 and MW had a clear understanding that MW intended to purchase W. Forge Holdings, Inc. in part with the funds to be raised by G5

10. G5 and MW both understood that time was of the essence. (Exhibit 2, Third Sentence)

11. G5 authored the Contract.

12. The Contract provided for a term of One hundred twenty (120) days from the signing of the Contract, unless extended pursuant to a written agreement. (Exhibit 1, page 6, Term/Termination paragraph)

13. As of July 13, 2007, One hundred twenty (120) days after the Contract was signed,

G5 failed to secure financing.

14. No additional written agreement was entered into between G5 and MW following the term of the agreement.

15. On August 25, August 31, and September 10, 2007, John Grambling Jr. of G5 represented to MW that MW could expect a wire transfer to facilitate the transaction. (Exhibit 3, three separate emails)

16. MW relied upon this representation in negotiations for the purchase of W. Forge Holdings, Inc.

17. G5 failed to deliver the wire transfer as promised in its e-mail of August 25, 2007.

18. G5 failed to deliver the wire transfer as promised in its e-mail of August 31, 2007.

19. G5 failed to deliver the wire transfer as promised in its e-mail of September 10, 2007.

20. MW was unable to proceed with the purchase of W. Forge Holdings, Inc. in a timely fashion as a direct result of G5's failure to deliver the promised wire transfer.

21. As a direct result of MW's inability to proceed with the purchase of W. Forge Holdings, Inc. in a timely fashion, MW incurred an additional Six million nine hundred thousand ($6,900,000.00) dollars in costs to consummate the transaction.

22. Despite G5's failings MW was eventually able to secure financing and purchase W. Forge Holdings, Inc.

## CLAIMS

### COUNT I

23. Plaintiff incorporates by reference paragraphs 1 through 22 above as though fully restated herein.

24. G5 principle John Grambling, Jr. represented to MW on three (3) different occasions that money had been or would soon be wire transferred to MW's account. (Exhibit 3 – three different emails)

25. G5 knew or should have known that the representation was false when it was made.

26. MW relied upon G5's representations and believed them to be true.

27. In reliance upon G5's representations, MW represented to W. Forge Holdings, Inc. that money would be available to proceed with the purchase after the wire transfers were completed.

28. G5 knew or should have known that MW would rely upon G5's representations that the money would be wire transferred to MW's account.

29. G5 knew or should have known that MW would suffer damages as a result of relying upon G5's fraudulent representations that the money would be wire transferred to MW's account.

30. G5 never made the wire transfers as represented to MW.

31. MW could not consummate the purchase of W Forge Holdings, Inc. in the manner and timing MW had represented to W. Forge Holdings.

32. As a direct and proximate result of not being able to consummate the purchase of W. Forge Holdings, Inc. at the promised time, MW suffered damages in the amount of Six million nine hundred thousand ($6,900,000.00) dollars.

## COUNT II

33. Plaintiff incorporates by reference paragraphs 1 through 32 above as though fully restated herein.

34. G5 principle John Grambling, Jr. represented to MW on three (3) different occasions that money had been or would soon be wire transferred to MW's account. (Exhibit 3 – three different emails)

35. G5 knew or should have known that the representation was false when it was made.

36. MW relied upon G5's representations and believed them to be true.

37. In reliance upon G5's representations, MW represented to W. Forge Holdings, Inc. that money would be available to proceed with the purchase after the wire transfers were completed.

38. G5 knew or should have known that MW would rely upon G5's representations that the money would be wire transferred to MW's account.

39. G5 knew or should have known that MW would suffer damages as a result of relying upon G5's fraudulent representations that the money would be wire transferred to MW's account.

40. G5 never made the wire transfers as represented to MW.

41. MW could not consummate the purchase of W Forge Holdings, Inc. in the manner and timing MW had represented to W. Forge Holdings.

42. As a direct and proximate result of not being able to consummate the purchase of W. Forge Holdings, Inc. at the promised time, MW suffered damages in the amount of Six million nine hundred thousand ($6,900,000.00) dollars.

## COUNT III

43. Plaintiff incorporates by reference paragraphs 1 though 42 above as though fully restated herein.

44. On August 25, August 31, and September 10, 2007, John Grambling Jr. of G5 represented to MW that MW could expect a wire transfer to facilitate the transaction. (Exhibit 3,

three separate emails)

45. G5's promises were clear, definite and unequivocal and were designed to induce MW to continue its working relationship with G5.

46. In reliance upon G5's representations, MW represented to W. Forge Holdings, Inc. that money would be available to proceed with the purchase after the wire transfers were completed.

47. G5 knew or should have known that MW would rely upon G5's promise that the money would be wire transferred to MW's account.

48. G5 failed to transfer the money into MW's account as promised.

49. G5 could reasonably foresee that failure to perform pursuant to the promise would cause the damages MW has suffered.

50. As a direct and proximate result of G5's failure to fulfill its promise to MW, MW was not able to consummate the purchase of W. Forge Holdings, Inc. at the promised time.

51. As a direct and proximate result of MW's failure to consummate the purchase of W. Forge Holdings, Inc. at the promised time, the cost of the purchase of W. Forge Holdings, Inc. increased by Six million nine hundred thousand ($6,900,000.00) dollars.

52. The increased costs of purchasing W. Forge Holdings, Inc. are damages suffered by MW.

53. The damages suffered by MW are directly attributable to G5's failure to fulfill its promise.

## COUNT IV IN THE ALTERNATIVE

54. Plaintiff incorporates by reference paragraphs 1 through 53 above as though fully restated herein.

55. G5 and MW entered into a contract on March 15, 2007. (Exhibit 1)

56. Pursuant to the contract G5 agreed to provide its best efforts to obtain financing for MW. (Exhibit 1 – page 2, first bullet point, first sentence.)

57. G5 understood that time was of the essence. (Exhibit 2)

58. G5 knew that MW required financing for the purchase of W. Forge Holdings, Inc.

59. The terms of the contract required the financing to be completed within One hundred twenty (120) days of the date the contract formation. (Exhibit 1, Page 6, Term/Termination paragraph)

60. The terms of the contract required that G5 maintain periodic contact with MW representatives to ensure open and clear understanding of issues relating to fund raising including timing, pricing, legal terms and business impacts. (Exhibit 1, Page 2, second bullet point)

61. G5 breached the contract by failing to use its best efforts to secure financing in the One hundred twenty (120) day term of the contract.

62. G5 breached the contract by failing to ensure an open and clear understanding of the issues relating to the timing of the fund raising.

63. G5 failed to ensure an open and clear understanding of the issues relating to the timing of the fund raising when John Grambling Jr. represented to MW on three (3) separate occasions that a wire transfer being made or was imminent, and the wire transfer did not occur. (Exhibit 3 – 3 emails)

64. MW could not consummate the purchase of W. Forge Holdings Inc. in a timely fashion due to G5's inability to secure financing within One hundred twenty (120) days from the date of contract formation.

65. MW could not consummate the purchase of W. Forge Holdings Inc. in a timely fashion when G5 did not make the promised wire transfers.

66. MW's inability to consummate the purchase of W. Forge Holdings Inc. in a timely fashion caused MW to incur additional expenses for the purchase of W. Forge Holdings, Inc., in the amount of Six million nine hundred thousand ($6,900,000.00) dollars.

WHEREFORE, Plaintiff, MW Universal, Inc., demands the following relief:

1. That a judgment be entered against the Defendant for compensatory damages in an amount as the trier of fact may deem fair and reasonable, as shown by the evidence;

2. That the Plaintiff recover its costs herein expended, including reasonable attorney fees and costs;

3. That the Plaintiff be awarded pre and post judgment interest at the judgment rate;

4. That Plaintiff be granted trial by jury; and

5. That Plaintiff be granted any and all other relief to which it appears to be entitled.

Respectfully Submitted,

BULLOCK & COFFMAN, LLP

/S/ J. Ross Stinetorf
J. Ross Stinetorf
234 North Limestone
Lexington, Kentucky 40507
Telephone: (859) 225-3939
Facsimile: (859) 225-5748
Counsel for Plaintiff